IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-206-FL

| | |
|---|---|
| ADRIAN DAVIS CAPPS, JR., )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, -19] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Adrian Davis Capps, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI payments on June 29, 2011, alleging disability beginning March 1, 2009. (R. 138-48). The claim was denied initially and upon reconsideration. (R. 62-94). On March 21, 2013, Claimant amended his alleged onset date to October 19, 2011. (R. 156). A hearing before an Administrative Law Judge ("ALJ") was held on

April 1, 2013, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 41-61). On May 24, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 20-40). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 95), and the Appeals Council denied Claimant's request for review on July 22, 2014 (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

2

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) giving less than controlling weight to the opinion of a treating physician; and (2) improperly evaluating Claimant's credibility. Pl.'s Mem.

3

[DE-18] at 9-16.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the application date. (R. 25). Next, the ALJ determined Claimant had the following severe impairments: high blood pressure, history of right elbow bursitis, degenerative joint disease status, history of right hip arthroplasty, depression, and history of alcohol abuse. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26-27). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild difficulties in his activities of daily living and social functioning and moderate difficulties in concentration, persistence and pace with no episodes of decompensation of an extended duration. (R. 27).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform light[1] work with the following specific limitations: occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally bend, balance, stoop, kneel, crouch, and crawl; frequently (not constantly) reach in all directions

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

using the right upper extremity; wear a soft knee brace as needed that would not affect production; needs a sit/stand adjust option that will allow him to sit, stand, and adjust his body as needed for comfort without a loss of production; avoid occupations with hazardous machinery and exposure to vibrations; and perform only simple, routine, repetitive tasks. (R. 27-33). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 28). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of any past relevant work. (R. 33). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 34-35).

## B.   Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing Claimant was 52 years old and living with his wife. (R. 47, 49). He last worked as a metal framer and drywall hanger in the construction industry in 2009 and had done that type of work for nearly 20 years. (R. 47-48, 58). Claimant is 5'9" tall and weighed 217 pounds at the time of the administrative hearing. (R. 50). He underwent right hip surgery in July 2012 and received two weeks of in-home physical therapy thereafter, but he has not continued therapy and has not engaged in exercise or walking since that time. *Id.* His right hip is doing well and he can ambulate without an assistive device, but he is starting to experience some pain in his left hip. (R. 50, 56). Claimant is right-hand dominant and has a knot in his right elbow, but it is not painful. (R. 51). He has constant pain in his knees. *Id.* Claimant injured both knees as a teenager and has had knee injuries throughout his life, so they have always been a problem, but he has never had knee surgery. (R. 52). At times when he is experiencing more pain or doing a lot

5

of standing and walking—"a lot" as defined by Claimant to mean walking a quarter of a mile or standing for 10 minutes—he uses a soft knee brace. (R. 52-53). Wearing the knee brace allows Claimant to stand longer and walk farther. (R. 53).

Claimant experiences back pain and previously self-medicated with alcohol, but he no longer does so because he takes Percocet. (R. 53-54). His pain medication causes grogginess and drowsiness, and he usually takes an hour-long nap around 2:00 p.m. *Id.* Standing for more than 10 minutes causes Claimant's back to "draw[] up in a knot," and he is afraid there is something wrong with a disc. (R. 54). Claimant's doctor ordered a back x-ray at the hospital but did not receive the results for a reason unknown to Claimant. (R. 55). Claimant is unable to bend or stoop to pick up anything due to his back pain, which prevents him from returning to his prior work. *Id.* He cannot lift more than five or ten pounds. *Id.* Claimant does not have difficulty sleeping. *Id.*

Claimant spends his day reading, playing guitar, and doing some household chores, such as washing dishes, laundry, and vacuuming. (R. 48-50). His wife also does light housekeeping and works some, but she is in poor health and had been denied benefits. (R. 49). Claimant lost his driver's license due to a DUI conviction in 1993 and never obtained a new license. *Id.* Claimant does not go out much but has friends over on the weekends for cookouts and such. (R. 56).

## C. Vocational Expert's Testimony at the Administrative Hearing

Roy Sumpter testified as a VE at the administrative hearing. (R. 57-60). After the VE classified Claimant's past work experience, the ALJ asked the VE to assume a hypothetical individual of the same age, education, and prior work experience as Claimant with the RFC to perform light exertional work with the following limitations: only occasional climbing of stairs or ramps; only occasional bending, balancing, stooping, crawling, kneeling, or crouching; never climb

ropes, ladders, or scaffolds; avoid occupations with hazardous machinery and exposure to vibrations; limited to simple, routine, repetitive tasks; frequent (but not constant) reaching in all directions with the right upper extremity; as needed wear a knee brace that would not affect production; and requires a sit/stand adjust option to adjust the body as necessary for comfort without a loss of production. (R. 58-59). The VE indicated the hypothetical individual could not perform Claimant's past work, but could perform the jobs of cashier II (working in a restaurant, parking garage, or the like), Dictionary of Occupational Titles ("DOT") number 211.462-010, light exertion with an SVP of 2; bench assembler (working at a bench), DOT code 706.684-042, light exertion with an SVP of 2; and routing clerk (clerical type job), DOT code 222.687-022, light exertion with an SVP of 2. (R. 59). The ALJ next added the limitation of missing four or more days of work per month, and the VE indicated that number of absences would preclude work. (R. 59-60). The VE affirmed his testimony was consistent with the DOT, except with respect to the sit/stand option, which is not addressed by the DOT. (R. 60).

## V. DISCUSSION

### A.     The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record, including medical opinions, and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Claimant contends the ALJ erred when assessing Claimant's RFC by (1) giving less that controlling weight to the opinion of Dr. Frueh, Claimant's treating orthopedist, and (2) conducting

7

an improper credibility analysis. Pl.'s Mem. [DE-18] at 9-16. Defendant in response contends the ALJ properly weighed Dr. Frueh's opinion and correctly determined that Claimant's subjective complaints were not fully credible. Def.'s Mem. [DE-20] at 12-17.

### i.     Dr. Frueh's Opinion

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the

8

physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

Dr. Frueh performed Claimant's right total hip arthroplasty on July 12, 2012. (R. 31, 281-82). As the ALJ noted, on December 17, 2012, Dr. Frueh reported in a treatment note that Claimant was doing "wonderfully" with "no pain whatsoever" after two months of full weight bearing and he was walking without a limp. (R. 31, 345). In a letter of the same date, Dr. Frueh provided the following opinion:

> Mr. Capps has undergone right total hip arthroplasty for AVN of his right hip. He has done well, but given the fact that he has undergone total hip arthroplasty, would recommend sedentary work only, would recommend avoiding heavy lifting. Anything requiring climbing, crawling, or squatting is not recommended. Sedentary work all in all is most appropriate after total hip arthroplasty.

(R. 344). The ALJ evaluated Dr. Frueh's opinion as follows:

> Although a treating orthopedic specialist, the undersigned finds good cause to give little weight to Dr. Frueh's opinion that the claimant should perform sedentary work in light of his contemporaneous examination findings and the results of imaging studies, which do not reflect any significant hip abnormalities. There is no indication of the claimant seeking further treatment from Dr. Frueh and the claimant testified he does not require a hand held device. By limiting the claimant to light work with occasional postural maneuvers (except for climbing ladders, ropes or scaffolds which should never be done), the undersigned has further accommodated the claimant's post-surgical hip condition. In addition, the undersigned has accommodated the claimant's subjective allegations of being unable to walk or stand for prolonged periods by providing for a sit/stand adjust option and for the wearing of soft knee

9

braces as needed.

(R. 32).

Claimant argues Dr. Frueh's opinion that Claimant should be limited to sedentary work should have been given controlling weight because he is a specialist, who examined Claimant on several occasions, relied upon medical tests, performed Claimant's hip replacement, and monitored Claimant's rehabilitation. Pl.'s Mem. [DE-18] at 11. The ALJ either explicitly or implicitly acknowledged each of these factors in discussing in detail Dr. Frueh's treatment of Claimant, but nevertheless found the limitation to sedentary work unsupported. (R. 31-32). It was within the ALJ's discretion to decline to give controlling weight to Dr. Frueh's opinion where, as here, Dr. Frueh's treatment notes indicate Claimant's hip was doing "wonderfully" with "no pain whatsoever" after two months of full weight bearing, he was walking without a limp, and objective testing, including an examination and x-rays, was negative. (R. 31, 345); *Mastro*, 270 F.3d at 178; *Craig*, 76 F.3d at 590.

Claimant also suggests that "Dr. Frueh's December 2012 statement functions as a permanent restriction to ensure the longevity of the replaced hip, as excessive activity or being overweight or obese may speed up normal wear and tear causing the hip replacement to loosen and become painful." Pl.'s Mem. [DE-18] 11-12 (internal footnote omitted).[2] Dr. Frueh offered no such

---

[2] Claimant asserts in a footnote that the ALJ did not find obesity to be a severe impairment, although the ALJ acknowledged Claimant's body mass index was routinely above 31, and that the ALJ stated he considered Claimant's obesity in accordance with S.S.R. 02-1p, but there is no direct evidence in the decision he actually did so. Pl.'s Mem. [DE-18] at 12 n.3. To the extent Claimant asserts the ALJ insufficiently considered his obesity, the undersigned finds no error. The ALJ noted that Claimant had not been diagnosed with obesity but that he had considered it in accordance with S.S.R. 02-1p. (R. 26 n.2, 33). Claimant does not argue that the ALJ erred in failing to find Claimant's obesity to be a severe impairment. Claimant points to no testimony or medical records indicating that his obesity caused any limitation in functioning or exacerbated the limiting effects of his other impairments beyond that found in the RFC. *See Wright v. Colvin*, No. 5:14-CV-479-FL, 2015 WL 5714918, at *7 (E.D.N.C. Sept. 29, 2015) (unpublished) (finding no error in ALJ's limited discussion regarding claimant's obesity where the medical evidence did not provide any more details of functional limitations from obesity). Given the dearth of evidence regarding any functional impact from

10

justification for his recommended restriction to sedentary work, nor is it apparent whether Dr. Frueh's definition of sedentary is synonymous with the definition provided in the regulations. *See Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("[T]he more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given."). Moreover, under the regulations, there is no "special significance" given to the source of an opinion on issues reserved to the Commissioner, including a claimant's RFC. 20 C.F.R. § 416.927(d)(3).

Finally, Claimant contends the ALJ substituted his judgment for that of Dr. Frueh, noting that Dr. Frueh's opinion was not evaluated by the state agency consultants because it was issued after their review, and the ALJ did not substitute another medical opinion for Dr. Frueh's because he gave only little weight and some weight to the other medical opinions in the record. Pl.'s Mem. [DE-18] at 13-14. The regulations provide that while medical opinions on issues reserved to the Commissioner, including a claimant's RFC, are considered, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2); *see King v. Colvin*, No. 5:14-CV-401-RJ, 2015 WL 5655807, at *6 (E.D.N.C. Sept. 24, 2015) (unpublished) (rejecting argument that the ALJ was required to have a medical opinion as to a claimant's functional abilities because the ALJ cannot make his own specific medical findings) (citing 20 C.F.R. § 416.927(d)(2)). Accordingly, it was the role of the ALJ to determine Claimant's RFC after considering all the medical opinions, and he was not required to rely on any one opinion in doing so.

In sum, the ALJ applied the correct legal standards in evaluating Dr. Frueh's opinion and substantial evidence supports the weight afforded.

---

Claimant's obesity, it is unclear what more the ALJ should have said.

11

## ii. Credibility

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 416.929(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept

12

the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant contends the ALJ impermissibly discredited Claimant's pain allegations by requiring objective evidence of the severity of his pain, as evidenced by the ALJ's finding that "[a]lthough the claimant testified to chronic back and knee pain, there is no diagnostic evidence of any significant back or knee impairment in the record, but the claimant's primary care physician has noted some pain and reduced range of motion on examination." Pl.'s Mem. [DE-18] at 15 (citing (R. 32)). Claimant also contends that the ALJ placed excessive weight on Claimant's ability to perform minimal activities of daily living, such as playing guitar, bicycle riding, and light housework, and that it is unclear why the ALJ found some statements credible, specifically Claimant's need to wear a knee brace, and not others. *Id.* at 15-16. The ALJ was required to consider the objective medical evidence and Claimant's activities of daily living in assessing the Claimant's credibility and RFC. *See* 20 C.F.R. § 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *2. In doing so, the ALJ partially credited Claimant's allegations of pain and resulting limitations and sufficiently explained his determination in the context of each of Claimant's impairments. (R. 32).

The ALJ specifically addressed Claimant's allegation of continued hip pain, noting that after his July 2012 hip surgery Claimant reported being pain free in his right hip in December 2012, had

13

not returned to Dr. Frueh for further treatment or evaluation, and reported his pain medication was primarily for back pain. (R. 32, 345); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility") (citations omitted).

The ALJ specifically addressed Claimant's allegations of chronic back and knee pain, noting that Claimant had not been diagnosed with any significant back or knee impairment, but acknowledging findings by Claimant's primary care physician of pain and reduced range of motion on examination. (R. 32, 319-43). The ALJ also noted that despite these positive examination findings, during a July 8, 2012 pre-operative visit for the purpose of evaluating Claimant's hypertension and diabetes, Claimant reported regularly riding a bicycle, denied having any back pain, and had full range of motion with no motor deficits. (R. 32, 296-98). Claimant contends that the treatment note actually says Claimant "does try to ride his bike regularly" (R. 296), which is not the same as actually riding his bike regularly. Pl.'s Mem. [DE-18] at 15. The complete statement in the treatment note reads as follows: "Patient's functional status is limited by his right hip pain but he does try to ride his bike regularly [and] he denies any associated symptoms of chest pain shortness of breath, dyspnea on exertion, palpitations lightheadedness or dizziness." (R. 296). The statement can be reasonably read to suggest that Claimant was in fact riding his bicycle, because he explained that he was not experiencing associated symptoms when riding. *Id.* Even assuming Claimant was riding his bicycle on a more limited basis than regularly, the treatment note also indicates Claimant denied back and joint pain. (R. 297). Thus, there was no error in the ALJ's reliance on evidence that Claimant regularly rode, or at least attempted to regularly ride, his bicycle in discounting Claimant's

14

credibility regarding the severity of his knee and back pain.

Likewise, there is no evidence that the ALJ gave excessive weight, as Claimant suggests, to his testimony that he does some household chores, such as washing dishes, laundry, and vacuuming (R. 28, 49-50), where activities of daily living were but one factor appropriately considered by the ALJ in evaluating Claimant's credibility and RFC (R. 28-33). *See Page v. Astrue*, No. 5:11-CV-590-FL, 2012 WL 4889597, at *11 (E.D.N.C. Sept. 20, 2012) (unpublished) ("Evidence of daily activities is highly probative to the credibility analysis."), *adopted by* 2012 WL 4893736 (E.D.N.C. Oct. 15, 2012). Claimant cites *Parker v. Astrue* for the proposition that "[a]n individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act." 664 F. Supp. 2d 544, 555 (D.S.C. 2009) (quoting *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir. 1980)). However, Claimant fails to note that the *Parker* court prefaced its statement of this rule with "[i]n the absence of inconsistency between the medical records and testimony regarding Plaintiff's abilities . . . ." *Id.* Here, the ALJ found such inconsistency between the medical records and Claimant's testimony, supporting the ALJ's conclusion that Claimant's knee and back pain were not as severe as alleged. (R. 32). The ALJ discussed Claimant's testimony, treatment records, and medical opinions in assessing Claimant's credibility and RFC and sufficiently explained his decision. (R. 28-33). It is not within the province of the court to re-weigh the evidence where the ALJ has considered and analyzed all the relevant evidence and the ALJ's decision is supported by substantial evidence. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589).

Finally, the fact that the ALJ provided for Claimant to wear a knee brace as needed does not contradict his credibility finding, where the ALJ partially credited Claimant's complaints of knee pain but determined his pain was not totally debilitating as alleged. Claimant testified, and the ALJ

15

noted, that the knee brace enabled Claimant to stand and walk for longer periods of time (R. 28, 52-53), and the ALJ "accommodated the claimant's subjective allegations of being unable to walk or stand for prolonged periods by providing for a sit/stand adjust option and for the wearing of soft knee braces as needed" (R. 32). Accordingly, the Claimant has failed to demonstrate error in the ALJ's credibility determination.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-17] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-19] be ALLOWED, and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 26, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

16

district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the _12_ day of February 2016.

Robert B. Jones, Jr.
United States Magistrate Judge